FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**October 6, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ERIC EUGENE ROYER,

    Defendant - Appellant.

No. 22-5010
(D.C. No. 4:19-CR-00065-GKF-1)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **BALDOCK** and **CARSON**, Circuit Judges.
_____

Eric Eugene Royer appeals from the district court's judgment revoking his supervised release and imposing a ten-month sentence of imprisonment and a twenty-six-month term of supervised release. He argues the court erred by not granting a continuance of his revocation hearing and by imposing a substantively unreasonable sentence. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

In 2019, Mr. Royer stopped his truck, blocked traffic, and began yelling at other cars that drove around his truck. He pulled a handgun from his pocket and pointed it at one car. After that car drove around him, Mr. Royer got back in his truck and began pursuing the car. One of the car's occupants called the sheriff's office. Deputies stopped Mr. Royer's truck at gunpoint, seized a loaded handgun from his pocket, and arrested him. Mr. Royer pleaded guilty in federal court to one count of possession of a firearm and ammunition by a felon. *See* 18 U.S.C. § 922(g)(1). The court sentenced him to 30 months of imprisonment and two years of supervised release.

In February 2021, Mr. Royer was released from prison and began serving his term of supervised release. Later that year, the United States filed in the district court a Petition for Warrant for Offender Under Supervision alleging the following. In May 2021, Mr. Royer tested positive for methamphetamine and later admitted to his probation officer that he had used methamphetamine. Also in May, he was arrested in Arkansas and served a two-month sentence for failure to appear. Before and after his Arkansas incarceration, he repeatedly failed to submit to required drug testing. Beginning in August 2021, Mr. Royer stopped submitting monthly reports, which the probation office uses to track changes in contact information and employment, and as of September 30, he had stopped making required daily calls to the drug testing hotline. On October 26, 2021, the probation officer went to the motel where Mr. Royer was living because she had been unable to contact or locate

2

him since October 14. Mr. Royer was not there, and the hotel manager told her he had not seen Mr. Royer for several days. The officer asked the manager to have Mr. Royer call her immediately, and she left a card in the keycard slot of the motel room instructing Mr. Royer to call her. Mr. Royer never did so. The probation officer contacted Mr. Royer's mother on November 1 and 9. Mr. Royer's mother said that on October 29, he had called her from a borrowed phone to ask for money but she had not been able to reach him since.

Based on these allegations, the petition asserted Mr. Royer had committed three Grade C violations of supervised release: (1) failing to submit monthly written reports to his probation officer and to contact his probation officer as directed; (2) failing to abide by the policies and procedures of his drug testing program; and (3) testing positive for methamphetamine and admitting to using it.

Prior to his revocation hearing, Mr. Royer filed a motion for a downward variance from the sentencing range for his violations set out in the United States Sentencing Guidelines Manual, which was six to twelve months in prison, *see* USSG § 7B1.4(a) and (b)(3). He said he would stipulate to the alleged violations and ask the district court for a sentence that would place him in a halfway house in Tulsa. But at the revocation hearing, when the district court asked Mr. Royer if he had failed to submit required monthly reports for August through November 2021, he stated he knew of only one such failure. The court then asked the government to call Mr. Royer's probation officer to testify.

3

The probation officer testified that Mr. Royer initially submitted monthly reports through May 2021, but after release from his Arkansas confinement, he did not submit monthly reports for August through November 2021. In October she had given him a report and asked him to submit it, but he never did. The officer also testified that in May 2021, Mr. Royer had tested positive for and admitted to using methamphetamine, and that he had missed thirteen drug tests.

Before cross-examining the officer, defense counsel asked for a continuance because the matter had become contested. The court agreed the matter was now contested but denied a continuance because the court was down one judge, each judge's docket had recently increased 350%, and the court was falling behind in its criminal docket by twelve to fifteen cases per month.

With the motion denied, defense counsel then cross-examined the probation officer about the monthly reports. She testified that she sometimes met with Mr. Royer at his motel, and although it was possible he completed report forms she gave him, she never received reports for August through November, and it was not possible those reports were lost or misplaced. She also agreed that Mr. Royer was arrested at the residence he had listed with the probation office.

After cross-examination of the probation officer, Mr. Royer testified. As to the monthly reports for August through November 2021, he said that, except for one month when he was recovering from surgery, his probation officer brought the report to him at the motel where he was living, he would complete it, and she would take it with her. He admitted he had used methamphetamine and tested positive for it. And

he contended he had been drug-tested eight times per month and had never changed his address.

The district court found Mr. Royer had admitted to violating a condition of supervised release prohibiting the use of drugs and that the probation officer's testimony about the monthly-report and drug-testing violations was credible. After some discussion about the viability of sentencing Mr. Royer to a halfway house or transferring his supervision to New Mexico or Missouri, the district court denied his motion for a variance, finding there were "no factors present . . . that separate this defendant from the mine run of similarly situated defendants," R., Vol. II at 40. The court then sentenced him to ten months of imprisonment followed by twenty-six months of supervised release. Mr. Royer appeals.

## II.

Mr. Royer first contends the district court erred in denying his motion for a continuance. Our review is for an abuse of discretion, and we "will only find error if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant." *United States v. McClaflin*, 939 F.3d 1113, 1117 (10th Cir. 2019) (internal quotation marks omitted). To that end, we examine four factors in light of "the individual circumstances of the case": "(1) the diligence of the party seeking the continuance; (2) the likelihood the continuance, if granted, would have accomplished the stated purpose; (3) the inconvenience to the opposing party, witnesses, and the court; and (4) the need for the continuance and any harm resulting from its denial."

*Id.* (internal quotation marks omitted).  In this review, "[t]he final factor is the most important." *Id.* (internal quotation marks omitted).

Mr. Royer satisfies none of these factors.  Regarding the first, he argues he was diligent in requesting the continuance because the need for one arose only when the probation officer testified about the monthly reports.  But that situation was of his own making.  Mr. Royer had six weeks between his initial appearance and the revocation hearing to review the allegations and contest them, but he instead led the court and the government to believe he would stipulate to all of the alleged violations.  As to the third factor, a continuance clearly would have inconvenienced not only the district court, whose docket was overloaded, but also government counsel and the probation officer, each of whom would have had to make another court appearance.

Regarding the second and fourth factors, Mr. Royer contends a continuance would have allowed his attorney to gather exhibits and prepare defense witnesses regarding his failure to submit monthly reports.  But he fails to identify any such evidence, positing only that his attorney "may have been able to provide documentary evidence of his residence" or "narrow down time lines."  Aplt. Opening Br. at 13.  Moreover, although Mr. Royer maintained he was compliant with his drug testing, he acknowledged he failed to submit at least one monthly report and he admitted the third violation (use of methamphetamine).  Each of those admitted violations would have independently supported a Grade C violation.  We therefore

6

conclude he has not shown that a continuance would have accomplished his stated purpose or that the denial of a continuance prejudiced him.

For these reasons, we hold that the district court did not abuse its discretion in denying Mr. Royer's motion for a continuance.

III.

Mr. Royer next contests the substantive reasonableness of his sentence. Our review is for an abuse of discretion. *United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011). The parties agree that the district court's sentence was within the advisory Guidelines range, so the sentence is presumptively reasonable. *See id.* at 1232–33. But Mr. Royer may rebut the presumption "by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in 18 U.S.C. § 3553(a)." *McBride*, 633 F.3d at 1233 (brackets and internal quotation marks omitted).

Mr. Royer argues it was substantively unreasonable to sentence him to imprisonment rather than a halfway house. He posits that because he had no ties to Oklahoma, a halfway house would have provided more structure than living in a hotel, thereby assuaging the district court's concern about his failure to keep his probation officer informed of his address. He also contends that halfway-house placement would have been most effective with respect to one of the § 3553 factors—"provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," § 3553(a)(2)(D).

7

These arguments fail to rebut the presumption of substantive reasonableness. The district court was aware of the factual underpinnings of Mr. Royer's arguments and his lack of ties to Oklahoma but rejected the idea of sentencing him to a halfway house in Tulsa, finding he had "exhibit[ed] a pattern of noncompliance" and that a within-Guidelines sentence would be "an adequate deterrent" to Mr. Royer and others, "promote respect for the law, provide just punishment for the offense, and provide protection for the public." R., Vol. II at 41. Implicit in the district court's finding is that Mr. Royer's pattern of noncompliance would likely continue at a halfway house and placement in one would not be the most effective means of preventing drug use or failures to report for drug tests or submit monthly reports.

We likewise reject Mr. Royer's argument that the twenty-six-month term of supervised release is substantively unreasonable. In support, he points out that his violations were Class C violations, which is the lowest grade, *see* USSG § 7B1.1(a). He adds that he thought he had complied with the reporting requirements, he had only one positive drug test, and he had surgery in the fall of 2021 that affected his probation officer's ability to contact him in late October 2021 and his ability to meet his drug-reporting requirements. And he observes that the second term of supervised release is two months longer than his first term. But the district court clearly disagreed with Mr. Royer's view of the seriousness of his violations and rejected his attempt to excuse his reporting requirements. We cannot say the district court abused its discretion in that regard. And any limitations related to his fall 2021 surgery do not account for violations that occurred prior to the surgery. Nor was the second

term of supervised release substantively unreasonable simply because it was two months longer than the first. Given the ten-month prison sentence, the district court was permitted by statute to impose up to a twenty-six-month term of supervised release.[1] And the twenty-six-month term also fell within the Guidelines range for the term of supervised release for his original offense, which was one to three years, *see* USSG § 5D1.2(a)(2). This sentence was substantively reasonable given the pattern of Mr. Royer's noncompliance and the presumptive reasonableness of a within-Guidelines sentence, which Mr. Royer has failed to rebut.

IV.

We affirm the district court's judgment.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[1] When supervised release is revoked and an individual is sentenced to prison time, a court can include a term of supervised release after the imprisonment. *See* 18 U.S.C. § 3583(h). Such a term of supervised release cannot exceed the supervised release term authorized by the statute for the original offense less any term of imprisonment imposed upon revocation. *Id.* Mr. Royer's original offense, charged under 18 U.S.C. § 922(g)(1), was a Class C felony because the maximum term of imprisonment was ten years. *See* 18 U.S.C. § 924(a)(2) (2019) (setting a ten-year maximum term of imprisonment for § 922(g)(1) offense); *id.* § 3559(a)(3) (classifying an offense as a Class C felony "if the maximum term of imprisonment authorized is . . . less than twenty-five years but ten or more years"). And the maximum term of supervised release for a Class C felony offense is three years. § 3583(b)(2). Thus, under § 3583(h) and the ten months of prison time the district court gave, the court could impose up to twenty-six months of supervised release.